**DANIEL BONNETT (AZ # 014127)**
**RAVI PATEL (AZ # 030184)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
dbonnett@martinbonnett.com
rpatel@martinbonnett.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRENDA JOHNSON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TENET HEALTHCARE CORPORATION D/B/A ABRAZO HEALTH CARE; VANGUARD HEALTH SYSTEMS, INC., D/B/A ABRAZO HEALTH CARE; VHS of PHOENIX, INC.; VHS ARIZONA HEART INSTITUTE, INC.; VHS OF ARROWHEAD, INC.; VHS OF SOUTH PHOENIX, INC., VHS OUTPATIENT CLINICS, INC.,<br><br>　　　　　Defendant. | CASE NO.:<br><br>**COMPLAINT** |

This is an action for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*. and Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

## JURISDICTION AND VENUE

1.　This Court has jurisdiction pursuant to the ADA, 42 U.S.C. § 12117, as well as 28 U.S.C. § 1331.

2.　Defendants have conducted business within Maricopa County, Arizona. All

acts and omissions alleged against said Defendants have occurred within the District of Arizona so as to give rise to both subject matter and personal jurisdiction of this Court.

3. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

4. All conditions precedent to jurisdiction under the ADA have been met.

5. On June, 1, 2011, Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), charge No. 540-2011-02131, alleging, *inter alia*, disability discrimination in violation of the ADA and ADAAA.

6. Plaintiff has received a Notice of Right to Sue with regard to her EEOC charge dated February 27, 2014 and has timely commenced this action within 90 days of receipt of the Notice of Right to Sue.

**PARTIES**

7. Brenda Johnson ("Plaintiff" or "Johnson") is and was at all times relevant, a citizen of the United States and a resident of Maricopa County.  At all times relevant, Ms. Johnson was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8) because, with or without an accommodation, she could perform the essential functions of each employment she desired at Defendants' Hospitals.  During relevant periods of time, Ms. Johnson applied for various Registered Nurse ("RN") positions at Defendant's Hospitals for which she was qualified. Ms. Johnson has standing to bring this suit.

8. During relevant periods of time, Vanguard Health Systems, Inc., d/b/a Abrazo Health Care ("Defendant Vanguard" or "Abrazo") was a corporation headquartered in Nashville, Tennessee and actively engaging in business in Maricopa County, Arizona.  Defendant Vanguard owned and operated the following hospitals in Maricopa County, Arizona, through its wholly owned subsidiaries VHS of Phoenix, Inc., VHS of Arrowhead, Inc., VHS of South Phoenix, Inc., VHS Arizona Heart Institute, Inc., and VHS Outpatient Clinics, Inc.:  Arizona Heart Hospital, Arrowhead Hospital, Maryvale Hospital, North Peoria Emergency Center, Paradise Valley Hospital, Phoenix Baptist Hospital, West Valley Hospital, West Valley Emergency Center, Abrazo Medical

1  Group, and Arizona Heart Institute. Defendant Vanguard was acquired by Tenet
2  Healthcare Corporation in or around October 2013. At all times relevant, the Defendant
3  was an "employer" within the meaning of 42 U.S.C. § 12111(5).

4      9. Tenet Healthcare Corporation d/b/a Abrazo Health Care ("Defendant Tenet"
5  or "Abrazo") is a Nevada for-profit corporation with its principal place of business in
6  Dallas, Texas. Defendant Tenet acquired Defendant Vanguard and its subsidiaries on or
7  around October 1, 2013 and is actively engaging in business in Maricopa County, Arizona
8  operating the following hospitals in Maricopa County, Arizona formerly owned and
9  operated by Defendant Vanguard and its subsidiaries: Arizona Heart Hospital, Arrowhead
10 Hospital, Maryvale Hospital, North Peoria Emergency Center, Paradise Valley Hospital,
11 Phoenix Baptist Hospital, West Valley Hospital, West Valley Emergency Center, Abrazo
12 Medical Group, and Arizona Heart Institute. According to information available on its
13 website, Defendant Tenet assumed all debt of Defendant Vanguard as part of its
14 acquisition of Vanguard. Accordingly, at all times relevant, Defendant Tenet was and is
15 an "employer" within the meaning of 42 U.S.C. § 12111(5) for purposes of this action.

16     10. VHS of Phoenix, Inc., is a Delaware corporation with principle place of
17 business in Maricopa County, Arizona.

18     11. VHS of Arrowhead, Inc., is a Delaware corporation with principle place of
19 business in Maricopa County, Arizona.

20     12. VHS Arizona Heart Institute, Inc., is a Delaware corporation with principle
21 place of business in Maricopa County, Arizona.

22     13. VHS of South Phoenix, Inc., is a Delaware corporation with principle place
23 of business in Maricopa County, Arizona.

24     14. VHS Outpatient Clinics, Inc., is a Delaware corporation with principle place
25 of business in Maricopa County, Arizona.

26     15. Based on the forgoing, Defendant Vanguard, Defendant Tenet, VHS of
27 Phoenix, Inc., VHS of Arrowhead, Inc., VHS Arizona Heart Institute, Inc., VHS of South
28 Phoenix, Inc., and VHS Outpatient Clinics, Inc., are jointly and severally liable to Plaintiff

for the claims alleged herein. Alternatively, Defendant Tenet has successor liability to Plaintiff for the acts and omissions of Defendant Vanguard as alleged herein. Accordingly, Defendants are also each referred to herein, separately and collectively, as "Abrazo."

## GENERAL ALLEGATIONS

16. Between January 30, 2010 and January 25, 2011, Plaintiff submitted approximately sixty-one (61) applications for vacant and/or advertised Registered Nurse (RN) positions with Defendants for which Ms. Johnson possessed at least the minimum qualifications required by Defendants.

17. During the time she was applying for these RN positions, Ms. Johnson was in recovery from a past drug addiction which caused physical or mental impairments that substantially limited one or more of her major life activities.

18. As part of her recovery, Ms. Johnson was a part of the Arizona State Board of Nursing ("ASBN") monitoring program for individuals who self-report or are reported for drug and/or alcohol addiction or abuse. The ASBN operated two such programs. One nursing program is known as CANDO, which stands for Chemically Addicted Nurses Diversion Option. The other program is called Monitoring. These programs are intended to assist licensed nurses through a monitoring and recovery program for chemically dependent nurses, who meet certain eligibility criteria and who voluntarily enter into the program.

19. Notwithstanding her participation in the State Board of Nursing program, Ms. Johnson was still qualified for all of the positions for which she applied at Abrazo.

20. In Ms. Johnson's applications, she advised Abrazo that she was a RN who has successfully completed a supervised rehabilitation program, was in recovery for past drug and alcohol abuse, and currently voluntarily participating in the Arizona Nursing Board monitoring program.

21. Ms. Johnson was interviewed in August of 2010, by Heather Harlan, the Clinical Manager for Cardiovascular Intensive Care Unit ("CVICU") RN position for

which she had applied at Abrazo's Arrowhead Hospital facility. When Ms. Johnson disclosed that she was in recovery for a past chemical addiction, that she was "clean" and no longer "using," that she was voluntarily participating in the Arizona State Board of Nursing Monitoring program, and that she may need certain workplace accommodations, Ms. Harlan immediately terminated the interview.

22.     In addition, Ms. Johnson also spoke with Yvette Harrington, a Nurse Recruiter for Abrazo, who told Plainitff that she would not be considered for any RN position because the Abrazo does not hire nurses in recovery.

23.     Ms. Johnson further advised Abrazo at that time that she had completed all mandatory requirements imposed by the Arizona State board of Nursing as a result of her past chemical and alcohol dependency, that she was able to return to work and provided Abrazo personnel with a description of the terms of her Nursing Board agreement. The agreement allowed Plaintiff to work as an RN with some accommodations relating to supervision, work hours, schedule, monitoring the dispensing of certain medications and periodic reporting. The requested accommodations were to be of varying levels at different points of time and would become less frequent and eventually unnecessary. All of which were reasonable and could have been accommodated by Defendants.

24.     After her interview with Ms. Harlan, Ms. Johnson applied for other RN positions with Abrazo for which she was and remains qualified, but was only granted a single interview in April of 2013.

25.     On or about March 28, 2013, Ms. Johnson discussed her applications with another Abrazo Nurse Recruiter, Carmen Hern. They discussed opportunities working at the ICU during the day shift, and Ms. Johnson disclosed that she was dedicated to several post-addiction recovery classes. Following this statement, Ms. Hern volunteered to confer with management regarding possibly employment by Ms. Johnson at Abrazo's Arrowhead and Paradise Valley facilities, which were closer to Ms. Johnson's residence.

26.     On April 2, 2013, Ms. Johnson interviewed with Brandon (Rafe) Dill, Director of Medical/Surgical ICU, and another unidentified nurse at Paradise Valley

1  Hospital for a position as a Registered Nurse, Medical/Surgical ICU at Paradise Valley
2  Hospital.  Mr. Dill indicated that he had temporary (travelers) nurse positions available
3  and four RN positions.  Two of the positions were scheduled during the day shift, and two
4  were during the night shift.  During the interview, Ms. Johnson disclosed that she was in
5  recovery for her past addiction and stated a preference for the day shift as a requested
6  accommodation.  Despite Plaintiff explaining why the day shift was preferable, Mr. Dill
7  stated that he would not consider her for a day shift position, claiming, without
8  justification, that it would be setting Ms. Johnson up for failure. Mr. Dill and Abrazo did
9  not extend an offer for any position.

27. Rather than engage in any interactive process or discussion with Ms. Johnson concerning her requested accommodation that would allow Plaintiff to work as a RN, Defendants refused to hire or even consider any of Plaintiff's numerous applications.

28. Ms. Johnson participates in a RN recovery group and has been advised by numerous other RNs in that group that many of them have applied for positions at Abrazo facilities and hospitals and have encountered similar experiences.

29. Upon information, none of the other nurses in the group have been hired by Abrazo and each was similarly advised that Abrazo does not hire RNs who are in recovery or participating in the Arizona State Board of Nursing Monitoring or CANDO programs.

30. Upon further information and belief, Defendants had and many currently still have policies and/or practices that similarly discriminate against and impact other similarly situated RNs who have successfully completed or are currently participating in supervised alcohol and/or drug rehabilitation and post-addiction recovery programs and who are no longer engaging in drug or alcohol use.

31. Upon information and belief, Defendant has hired nurses who were less qualified and less experienced than Plaintiff, after she applied and interviewed for nursing positions with Defendant.

///

///

# COUNT I

## DISABILITY DISCRIMINATION

### (VIOLATIONS OF ADA, 42 U.S.C. §§ 12101 *et seq.*)

32. Plaintiff incorporates by reference all paragraphs as fully set forth herein.

33. 42 U.S.C. § 12112(a) provides in pertinent part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

34. 42 U.S.C. § 12112(b) defines the term "discriminate" to include:

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited under this subchapter . . .;

(3) utilizing standards, criteria, or methods of administration –

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5) (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, . . .; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with such a disability . . .;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities .

. .

35. 42 U.S.C. § 12203 provides in pertinent part:

Prohibition against retaliation and coercion.

(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

(b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

36. At all times relevant, Plaintiff was a "qualified individual with a disability" as defined in 42 U.S.C. §§ 12111(8) and 12102(1)(A)-(C) in that Plaintiff was substantially limited in one or more of the major life activities, however, she could, at all times relevant, perform the essential functions of the positions for which she applied, with or without reasonable accommodation.

37. At all times relevant, Plaintiff had a "disability" within the meaning of 42 U.S.C. § 12102(2) in that Plaintiff:

a. had a record of a physical or mental impairment that substantially limited one or more of her major life activities; and/or

b. was regarded by Defendants as having such an impairment.

38. In violation of applicable provisions of the Americans with Disabilities Act, as amended, Defendants discriminated against the Plaintiff in one or more of the following ways:

c. refusing to consider Plaintiff for positions that she was qualified and able to perform all of the essential functions of the job;

d. refusing to offer Plaintiff any reasonable accommodation which would have permitted her to be employed by Defendants;

8

1       e.      refusing to engage in an interactive process with Plaintiff to determine if she could perform the essential functions of the position for which she applied with a reasonable accommodation;

      f.      failing to adopt, implement and enforce adequate policies prohibiting unlawful discrimination and retaliation in the workplace;

      g.      failing to adopt, implement and enforce adequate policies to provide reasonable accommodations for individuals who have a record of a disability or are regarded as disabled; and

      h.      refusing to hire Plaintiff for positions she was qualified because of her disability.

39. By virtue of one, more or all of the foregoing violations of the ADA as alleged above, Plaintiff was discriminated against and is entitled to preliminary and permanent equitable and injunctive relief including, but not limited to, consideration for and award of any positions for which she is qualified.

40. By virtue of one, more or all of the foregoing violations of the ADA as alleged above, Plaintiff has suffered economic loss in the form of lost employment, employee benefits and other terms and conditions of employment to which she is rightfully entitled. Plaintiff has also suffered non-economic loss such as emotional distress and mental anguish by virtue of the acts or omissions of the Defendants so as to entitle Plaintiff to legal and equitable relief. Plaintiff is entitled to recovery of back pay, front pay and compensatory damages sufficient to make Plaintiff whole for all losses suffered as a result of Defendants' unlawful discrimination as well as attorneys' fees and costs.

41. By virtue of Defendants' deliberate indifference and/or intentional and knowing acts and omissions in violation of Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

## **DAMAGES**

42. As a direct and proximate result of Defendants' acts or omissions, Plaintiff

sustained and continues to sustain economic and non-economic injuries including, but not limited to, loss of income, benefits, out-of-pocket expenses and other monetary loss as well as non-economic damages in the form of mental anguish and emotional distress. Plaintiff is entitled to compensation, including pre-judgment interest, attorneys' fees and costs, for the harm and damages resulting from the Defendants' unlawful acts.

**WHEREFORE**, Plaintiff prays for the following relief against the Defendant:

A. A declaration that Defendants, separately and collectively, have violated the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA"), as amended, or, alternatively, that by virtue of its status as a successor-in-interest to Defendant Vanguard and its acts and omission, Defendant Tenet, is liable for Defendant Vanguard's violations of the ADA and ADAAA by discriminating and retaliating against Plaintiff because of a perceived disability or record of impairment;

B. An order directing Defendants to make Plaintiff whole for all losses she has suffered as a result of the Defendants' actions or omissions and providing Plaintiff with compensation and benefits she otherwise would have enjoyed through employment;

C. A preliminary and permanent injunctive relief against Defendants ordering that Defendants cease and desist from all unlawful discrimination and retaliation;

D. An order directing Defendants to hire Plaintiff to an RN position for which she is qualified and provide reasonable accommodation(s) for Plaintiff;

E. An award of money damages against Defendants, jointly and severally, or in the alternative, against Defendant Tenet, for all compensation lost and for lost future wages and benefits, including pre and post judgment interest;

F. An award of punitive damages;

G. An award of pre-judgment and post-judgment interest to Plaintiff on all lost wages and other monetary damages;

H. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 12205; and

I. Such other and further relief as the Court deems just and proper.

1  Dated this 28th day of May, 2014.

                                  MARTIN & BONNETT, P.L.L.C.

                                  By: s/Daniel L. Bonnett
                                        Daniel L. Bonnett
                                        Ravi Patel
                                        1850 N. Central Avenue, Suite 2010
                                        Phoenix, AZ  85004
                                        (602) 240-6900

                                        *Attorneys for Plaintiff*